# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BANK OF AMERICA, N.A.,

    Plaintiff,

    v.

MAZON STATE BANK,

    Defendant.

No. 05 C 7165
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a case between two banks involved in the processing and payment of a fraudulent check. The issue is which bank bears the financial responsibility. Plaintiff, Bank of America, has moved for summary judgment. For the reasons that follow, Plaintiff's motion is denied.

### I.    BACKGROUND

On August 12, 2004, The Pharmaceutical Research and Manufacturers of America ("PhRMA")—one of Bank of America's customers—issued and signed check number 88175 dated August 12, 2004. The check, on its account at Bank of America, was made payable to the "University of Chicago Law School" in the amount of $200,000. On that same day, PhRMA mailed the check to the University of Chicago Law School.

On September 8, 2004, George and Cathlyn Murdaugh deposited a check into their account at Mazon State Bank ("Mazon"). Like the check PhRMA mailed to the University of Chicago Law School, the check the Murdaughs deposited was number 88175 and was dated August 12, 2004. In addition, it appeared to be drawn by PhRMA on its account at Bank of America and it was in the amount of $200,000. However, the payee on the check the Murdaughs

deposited was "George Murdaugh." According to Mazon, no alteration was apparent from their visual inspection of the check.

Mazon placed a five-day hold on the deposit, which was standard for a large check. Upon the expiration of the five-day hold, on September 15, 2004, Cathlyn Murdaugh came in and began to withdraw the money. Mazon's tellers became concerned and called Deborah Durando, Mazon's compliance officer. On September 15, 2004, Ms. Murdaugh withdrew a total of $21,600. Prior to her withdrawals on September 15, 2004, Bank of America paid Mazon for the $200,000 check that the Murdaughs deposited on September 8, 2004. On September 15, 2004, Durando instructed that the hold on the funds in Murdaugh's account be extended.

The extended hold would have expired on September 23, 2004, but Mazon allowed Murdaugh to withdraw the funds a day early, on September 22, 2004, after Mazon received a threatening call from Ms. Murdaugh's attorney.

On October 22, 2004, PhRMA contacted Bank of America regarding the check that the Murdaughs had deposited. PhRMA claimed that the payee had been altered, and demanded that Bank of America re-credit its account. Bank of America subsequently returned the original $200,000 check to Mazon. Mazon then turned that original check over to the FBI. According to Durando, the FBI agent told her that "from the naked eye, it did not appear that the check had been altered and they would have to send it to their laboratory."

On or about October 27, 2004, Bank of America demanded $200,000 from Mazon. On December 5, 2005, Bank of America notified PhRMA that it was providing PhRMA with $200,000 in provision credit.

## II. DISCUSSION

*A. Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether any genuine issue of material fact exists, all facts must be construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

*B. Altered or Forged*

A key issue in this matter is whether the check was altered or forged;[1] neither party maintains that PhRMA actually issued a $200,000 check to the Murdaughs. A depositary bank—in this case, Mazon—presenting a check for payment from the issuing bank, warrants that the check "has not been altered." 810 ILL COMP. STAT. 5/3-417(a); 810 ILL COMP. STAT. 5/4-208(a); *Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 620 (7th Cir. 2006); *Clean World Engineering, Ltd. v. MidAmerica Bank, FSB*, N.E.2d 110, 117-18 (2003); *Wachovia*

---

[1] If the check were "altered," that would mean that the original check that PhRMA signed and mailed was deposited after the payee line was somehow changed (via chemical washing or some other method) to read "George Murdaugh." If the check were "forged," by contrast, it might mean that the perpetrator of the fraud "used sophisticated copying technology to produce a copy that was identical in every respect to the original check . . . except for an undetectable change of the payee's name." *Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 621 (7th Cir. 2006).

*Bank, N.A. v. FRB*, 338 F.3d 318, 321-22 (4th Cir. 2003). Conversely, the bank on which a check is drawn (hereinafter, I will use the term "drawee bank")—in this case, Bank of America—warrants to the presenting bank that the check is genuine, i.e., not forged. 810 ILL. COMP. STAT. 5/3-418; *Wachovia*, 457 F.3d at 622.

Here, Bank of America brought suit against Mazon arguing that the check the Murdaughs deposited was altered. Bank of America further argues that Mazon therefore violated its presentment warranty and is liable to Bank of America for the $200,000.[2] Mazon, for its part, argues that the check the Murdaughs deposited was forged—or at the very least, that Bank of America has not satisfied its burden of proving that the check was altered. Ultimately, if the check was altered, Bank of America will win, and if it was forged, Mazon will prevail. *See Wachovia*, 457 F.3d at 622.

Currently before me is Bank of America's motion for summary judgment. Construing the facts in the light most favorable to Mazon—as I must during this procedural posture—it is clear that genuine issues of material fact remain. Since Bank of America is unable, at this stage, to meet its burden of proving that the check was altered, I must deny its motion.

Bank of America relies heavily upon the Seventh Circuit's holding in *Wachovia*. In that case, a drawee bank sued a depositary bank seeking a declaration that the depositary bank was liable for the amount of a check that the drawee bank claimed was altered. *Wachovia*, 457 F.3d at 620. There, a customer of the depositary bank deposited a check into her account for $133,026 that listed her as the payee. *Id.* A subsequent investigation revealed that the woman who deposited the check was not the original payee, and that she had somehow substituted her name

---

[2]Bank of America is also seeking interest on the amount plus attorneys' fees and costs.

on the check. *Id.* By the time this was discovered, the depositor had withdrawn all the money and disappeared. *Id.* Furthermore, the drawee bank had destroyed the check in its regular practice. *Id.*

In affirming an award of summary judgment for the drawee bank, the court framed the issue as "whether, in cases of doubt, forgery should be assumed or alteration should be assumed." *Id.* at 622. The court went on to hold that "the tie should go to the drawee bank" and alteration should be assumed. *Id.* Bank of America—the drawee bank here—argues that I should rely on *Wachovia* and grant its motion for summary judgment.

The facts in this case are distinguishable from *Wachovia* in two significant respects. Either of these distinguishing facts, standing alone, would be sufficient to defeat Bank of America's motion. First, unlike in *Wachovia*, the deposited check has not been destroyed and is available for inspection. In addition, and also unlike in *Wachovia*, Bank of America has not suggested that the depositors—the Murdaughs—are unavailable.[3] These facts are significant because either one of them provides Mazon with at least the possibility of proving at trial that the check was forged and not altered. Such possibilities constitute genuine issues of material fact and are sufficient to defeat Bank of America's motion.

The existence of the deposited check and the inferred availability of the Murdaughs also render Bank of America's reliance on *Central States v. Slotky*, 956 F.2d 1369 (7th Cir. 1992) and its progeny misplaced. The *Slotky* court held that it was appropriate to resolve factual disputes on summary judgment when "the only 'factual' issue is one of characterization, that is, of

---

[3]As noted, at this stage, I draw all reasonable and justifiable inferences in favor of the non-movant, Mazon. *See Anderson*, 477 U.S. at 255. Thus, since Bank of America did not establish that the Murdaughs are unavailable, I must infer that they are available.

application of undisputed lay facts, *and* the opponent of summary judgment claims no right to a jury trial." *Slotky*, 956 F.2d at 1374 (emphasis in original). Bank of America points out that no jury demand has been made here, and suggests that *Slotky* counsels in favor of an award of summary judgment. However, in this case, unlike in *Slotky*, the factual issues are beyond mere characterization. Accordingly, *Slotky* is inapposite.[4]

My denial of summary judgment should not be read as a repudiation of the *Wachovia* rule, which states that in the case of a tie, one should assume the check was altered. *Wachovia*, 457 F.3d at 622. Rather, my ruling means simply that I am unwilling, at this stage, to declare the question a tie. Mazon is entitled to an opportunity to prove at trial that the check was forged. If, after trial, I am still unable to determine whether this check was forged or altered, then I will apply the rule Judge Posner enunciated in *Wachovia*, and Bank of America will prevail. In this case, however, I am unwilling to deem the altered versus forged question resolvable at the summary judgment stage.

### III. CONCLUSION

For the foregoing reasons, Bank of America's motion for summary judgment is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: April 9, 2007

---

[4]Because a genuine issue of material fact exists as to whether the deposited check was forged or altered, I need not consider Bank of America's alternative arguments.