IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BANK OF AMERICA, N.A.,              )
                                    )
                 Plaintiff,         )
                                    )
    v.                              )    No.  05 C 7165
                                    )
MAZON STATE BANK,                   )
                                    )
                 Defendant.         )

MEMORANDUM OPINION AND ORDER

This action has just reached this Court's calendar via random assignment after the recusal of its colleague, Honorable James Zagel, who had presided over the case during its 20-plus month life. Immediately following that reassignment this Court (1) had the case docket printed out, (2) identified the pleadings and other filed documents necessary for a full understanding of the issues and (3) obtained copies of those pleadings and documents from the parties' counsel.

Because the docket reflected Judge Zagel's April 9, 2007 denial of the Fed. R. Civ. P. ("Rule") 56 motion for summary judgment that had been brought by plaintiff Bank of America, N.A. ("Bank of America") against defendant Mazon State Bank ("Mazon"), this Court turned directly from its reading of the Complaint and Answer to an in-depth review of Judge Zagel's opinion (the "Opinion," Dkt. No. 53) and of all of the materials that the parties had tendered in support of and in opposition to the Rule 56 motion. For the reasons explained here, this Court has

reached a conclusion opposite to that of its esteemed colleague.

We District Judges are regularly reminded by our Court of Appeals (see, e.g., Midlock v. Apple Vacations W., Inc., 406 F.3d 453, 457-58 (7th Cir. 2005)) that we do not make law--our opinions are not precedential, and they carry weight only if and to the extent that fellow jurists at any level may find their analysis and the resulting conclusions persuasive. Despite that principle, the same court teaches that a counterpart of the law of the case doctrine, which presumptively precludes a reopening of matters already decided by courts that do create precedent, also operates in the case of reassignment from one district judge to another (for a recent thorough discussion of the policy considerations involved, see Minch v. City of Chicago, 486 F.3d 294, 301-02 (7th Cir. 2007)). But that doctrine is open to exception if there is a "compelling reason" for reexamination by the transferee judge (id. at 301)--and in this instance this Court finds such a compelling reason in its view that Judge Zagel unfortunately viewed an acknowledged difference in the litigants' views of a fact as a material difference when it is not, with the consequence being the continued existence of litigation that this Court concludes should have been terminated by the dispositive granting of Bank of America's motion.

Now to the task at hand. It is unnecessary to repeat Judge Zagel's straightforward and accurate recital of the facts

2

(Opinion at 1-2). Nor is there any question that he has correctly articulated the standard applicable to summary judgment motions, under which the nonmovant's version of any disputed facts--if properly presented in the form of admissible evidence (see Rule 56(e))--is to be credited in determining whether "there is no genuine issue as to any material fact" (Rule 56(c)). As this Court regularly repeats in its own summary judgment rulings, every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (see the seminal opinion in Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Here there is no question that the parties have differing views as to the nature of the unquestionably bogus (in one way or another) $200,000 check that was presented to Mazon with "George Murdaugh" rather than "University of Chicago Law School" shown as payee: Bank of America's customer Pharmaceutical Research and Manufacturers of America, which had issued its check for that amount bearing the identical date and check number and payable to the University's Law School, had no relationship of any kind with Murdaugh (and of course neither the University nor its Law School ever received the check that had been mailed to its address). Under the Illinois version of the Uniform Commercial Code there is a vital difference in result depending on whether such a check's transmutation has been the result (1) of an alteration (in which event Mazon would have breached its express warranty of

3

non-alteration under 810 ILCS 5/3-417(a)(2) and 5/4-208(a)(2)) or (2) of a forgery (in which event Bank of America would have breached its warranty of the check's genuineness, see 810 ILCS 5/3-418(c)).

Nor is there any question as to this Circuit's law on the subject. Just a little over a year ago our Court of Appeals dealt with a strikingly parallel situation in Wachovia Bank, N.A. v. Foster Bankshares, Inc., 457 F.3d 619 (7th Cir. 2006), in which Judge Posner succinctly summarized the result of his thoughtful analysis in these terms (id. at 622, with "Bank of America" substituted for "Wachovia" as the bank on which the check is drawn and "Mazon" substituted for "Foster" as the presenting bank, so that the quotation has been effectively adapted to this case):

> The bank on which a check is drawn warrants to the
> presenting bank that the check is genuine, USS § 3-418(c);
> id., Official Comment I; Henry J. Baily & Richard B.
> Hagedorn, *Brady on Bank Checks* § 28.11[1] (2006), hence not
> forged, while as we know the presenting bank warrants that
> the check hasn't been altered since its issuance.
>
> * * * *
>
> So the case comes down to whether, in cases of doubt,
> forgery should be assumed or alteration should be assumed.
> If the former, [Mazon] wins, and if the latter, [Bank of
> America]. It seems to us that the ties should go to the
> drawer bank, [Bank of America].

Mazon seeks to distinguish that squarely applicable holding on the grounds that the check in the Wachovia case had been

4

destroyed and that the asserted culprit in that case had disappeared, while neither of those things was true here. But during the extended lifetime of this lawsuit (both before and after Bank of America moved for summary judgment) Mazon had a full opportunity to engage in discovery and whatever other preparation that it considered necessary to respond to the Rule 56 motion, and:

> 1. As to the first asserted ground, the next unindented paragraph reflects that Mazon's own proffered evidence--the report of its forensic expert--has found him unable to opine as between alteration and forgery. On that score, then, the evidentiary situation is no different from one in which, as in <u>Wachovia</u>, the check no longer exists.
>
> 2. As to the second asserted ground, Mazon had--but it did not exercise--the full opportunity to seek input from the Murdaughs with which to respond to the Rule 56 motion. But as the later text reflects, in any event the Murdaughs have just unsurprisingly disclaimed responsibility for the bogus check[1] (although they--again unsurprisingly--also fail to explain just

---

[1] Their September 8, 2007 handwritten Answer to Mazon's later-referred-to Third Party Complaint disclaims knowledge of the check's alteration, but the Murdaughs have also been totally silent--with no response at all--as to Mazon's assertion in that pleading that it believes the check was forged.

>     how <u>any</u> check from Bank of America's customer came into
>     their hands).

In short, the purported distinctions are, in the familiar phrase, distinctions without a difference. <u>Wachovia</u> controls here.

Where this Court parts company with its colleague as to the impact of the <u>Wachovia</u> holding in this case is rooted in the already-indicated (and vital) fact that although the parties' respective evidentiary submissions on the subject of alteration v. forgery are different, the difference is not <u>material</u> (that is, it is not outcome-determinative), as is necessary to stave off summary judgment. By Bank of America's lights the evidence points to an alteration, but that of course does not control for Rule 56 purposes.[2] Instead this Court credits Mazon's version,

---

[2] Bank of America's investigator Ted Knesek ("Knesek") testified that four physical characteristics of the check indicated alteration:

> 1. verification of the check stock (Knesek Tr. 48);
>
> 2. discoloration in the payee block, which Knesek concluded was the result of "check washing" (<u>id</u>. 50);
>
> 3. what Knesek claimed were "readily viewable" differences in the font sizes (<u>id</u>. 50, 53); and
>
> 4. the tone of ink used to print "George Murdaugh" in the payee block (<u>id</u>. 50).

Knesek's inspection of the check, like the inspection by Mazon's forensic expert referred to later in this paragraph of the text, came after it had been tested by the FBI (to which Mazon had delivered the check).

6

tendered through its forensic expert James Hayes, who examined the check at FBI headquarters (utilizing various magnifying devices) and who stated in an affidavit (1) that significant damage to the check precluded a discerning forensic analysis to determine the check's characteristics and authenticity and (2) that he saw no apparent differences in font size, but (3) that he observed apparent discoloration in several areas of the check and ink spreading in the drawer area of the check. Most critically, Hayes stated that "The FBI report is inconclusive as to whether the document is altered" (Hayes Aff. ¶8.d) and went on to determine that <u>no conclusion could be drawn</u> as to whether the check was altered or forged, adding that further forensic examination and testing would be required to determine whether the check is altered, a counterfeit or forgery, or genuine (Hayes Aff. ¶8.f).

When the underbrush is cut away, what this Court finds critical for present purposes is that Mazon's expert witness Hayes has confirmed that he cannot opine on the crucial issue whether the check was altered or forged, and his speculation that additional scientific analysis might cast more light on that subject is just that: speculation. It must be remembered that Mazon did not choose to invoke Rule 56(f) in response to Bank of America's motion on the premise that more evidence was needed--it chose instead to go with Hayes' evidence (or more accurately,

7

nonevidence) as to the nature of the check.

As Bank of America has correctly pointed out, our Court of Appeals has frequently characterized the summary judgment stage (which it will be remembered is intended as a substitute for trial where no material facts are in dispute) in terms such as those it recently voiced in Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007):

> But we have consistently held that summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)(internal citations omitted).

To much the same effect, our Court of Appeals continues to teach (see, e.g., Demos v. City of Indianapolis, 302 F.3d 698, 706 n.12 (7th Cir. 2002)) the same message that Caisse Nationale de Credit v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996) first borrowed from one of this Court's earlier opinions:

> A party seeking to defeat a motion for summary judgment is required to "wheel out all the artillery to defeat it."

So the posture of the case from the perspective of Mazon's expert witness--and hence from Mazon's perspective--is that the question of alteration or forgery is very much in doubt. And that being so, this Court holds that the express teaching of the Wachovia case--the legal equivalent of baseball's "ties go to the runner"--clearly calls for a Rule 56 decision in favor of Bank of

8

America, rather than the no-decision reflected in Judge Zagel's opinion.[3]

In sum, this Court's reconsideration of the summary judgment issue plainly fits the "compelling reason" exception to the district-judge-to-district-judge law of the case doctrine, and it leads inexorably to a different outcome. There is no genuine issue of <u>material</u> fact, and Bank of America is entitled to a judgment as a matter of law. Mazon is ordered to pay Bank of America $200,000 plus interest and costs.[4]

Only one matter remains. As already mentioned in n.1, after Judge Zagel had ruled on the summary judgment motion Mazon filed a Third Party Complaint against the presumed culprits, the

---

[3] To the extent that Mazon attempts to escape that result by contending that Bank of America acted in bad faith <u>after</u> the check was paid, Bank of America correctly points to another Wachovia Bank case--in this instance <u>Wachovia Bank v. Fed. Reserve Bank of Richmond</u>, 338 F.3d 318, 322 (4th Cir. 2003), which correctly points out that U.C.C. §4-208 (its Illinois counterpart is 80 ILCS 5/4-208) specifies that the time to examine the good faith question is in the first instance, when the check is presented and paid. Thus any post-presentment or post-payment action on the part of Bank of America, such as that Mazon seeks to ascribe to it by testimony of dubious admissibility, does not provide a defense to the breach of warranty claim against Mazon. That in turn makes it unnecessary to rule on Bank of America's pending motion to strike Mazon's attempted reliance on some asserted telephone calls to Bank of America on grounds of evidentiary inadmissibility. That motion is denied as moot.

[4] Because the parties have not focused on quantifying the allowable amount of interest and have also not spoken to the issue of attorney's fees (which was part of the Complaint's prayer for relief), this Court will await prompt submissions from the parties so that a final judgment may be entered.

Murdaugh couple. Just last week the Murdaughs filed a pro se handwritten response that essentially says "Who, us?," disclaiming alteration of the check (and not responding at all as to Mazon's claim of its possible forgery). But there is no diversity of citizenship as between Mazon and the Murdaughs (both sides of that dispute share Illinois citizenship). And because there is no longer any federal anchor for that dispute, 28 U.S.C. §1367(c)(3) supports this Court's decision to decline to exercise supplemental jurisdiction over that dispute. Consequently Mazon's Third Party Complaint is dismissed, obviously without prejudice to its being reasserted in a state court of competent jurisdiction.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 17, 2007